Filing # 97679894 E-Filed 10/22/2019 02:41:57 PM

IN THE CIRCUIT COURT<br>
FOURTH JUDICIAL CIRCUIT<br>
DUVAL COUNTY, FLORIDA

ACOSTA, INC.,

    Plaintiff,

CASE NO.: 16-2019-CA-006708-XXX-MA

DIVISION: CV-A

v.

NATIONAL FRUIT PRODUCT COMPANY,
INCORPORATED,

    Defendant.

_____/

## AMENDED COMPLAINT

ACOSTA, INC., by and through undersigned counsel, hereby sues Defendant, National Fruit Product Company, Incorporated, and states as follows:

### Parties, Jurisdiction, and Venue

1. Acosta, Inc. ("Acosta") is a Delaware corporation with its headquarters in Jacksonville, Duval County, Florida.

2. Defendant, National Fruit Product Company, Inc. ("National Fruit Company"), is a corporation based in Winchester, Virginia.

3. Venue is proper in Duval County, Florida in that Acosta maintains its headquarters in Jacksonville, Duval County, Florida, the cause of action accrued here as National Fruit Company owed payment to Acosta in Duval County, and because the Broker Agreement at issue provides for venue in Jacksonville, Florida.

4. This Court has personal jurisdiction over National Fruit Company in accord with section 48.193, *Florida Statutes*, and the Constitution because, among other things, National Fruit Company conducts substantial and not isolated business activities in the state of Florida, National Fruit Company solicited Acosta at its headquarters in Jacksonville, Duval County,

Florida to represent it to customers in grocery channels, including representing it with grocers in Duval County, Florida, and because National Fruit Company breached a contract whose performance was due in Florida. Moreover, pursuant to Section 6.7 of the Broker Agreement incorporated herein, National Fruit Company contractually and "irrevocably and unconditionally" submitted to the jurisdiction of any Florida state court or United States federal court sitting in or having jurisdiction over Jacksonville, Florida.

5. All conditions precedent to the maintenance of the cause of action alleged herein have been complied with, have occurred either in fact or by operation of law, or have been waived.

### The Broker Agreement

6. On February 1, 2016, National Fruit Company and Acosta entered into a Broker Agreement (the "Broker Agreement"). A copy of the Broker Agreement is attached hereto and incorporated herein by reference as **Exhibit "A."**

7. Acosta initially sued WV White House Foods, LLC because the Broker Agreement identifies "White House Foods, Inc." as the client, however, Acosta has confirmed that this is a misnomer and National Fruit Company is the appropriate legal name for the other party to the Broker Agreement, and was at all times material the recipient of the services Acosta provided pursuant to the Broker Agreement.

8. Pursuant to the Broker Agreement, Acosta agreed to serve as a broker for National Fruit Company grocery products and provide sales and marketing services for such products within certain grocery channels (*e.g.,* Publix and Walmart), as more specifically described in the Broker Agreement and Schedules A, B, and C thereto.

9. In exchange for Acosta's sales and marketing services, National Fruit Company agreed to pay Acosta a Commission Rate on certain specifically identified National Fruit Company products, as set forth in Schedule B to the Broker Agreement. National Fruit Company agreed to pay Acosta's commissions on or before the 45th day following the end of the month in which the products were shipped, as set forth in Section 2.2 of the Broker Agreement.

10. The Broker Agreement provided that "[e]ither party may terminate this Agreement at any time for any reason by giving the other Party at least thirty (30) days' prior written notice of such termination."

11. On or about June 4, 2019, National Fruit Company improperly attempted to terminate the Broker Agreement without providing the required thirty (30) days' prior written notice of termination.

12. Pursuant to section 1.2, the Broker Agreement remained in full force and effect through July 4, 2019 and National Fruit Company is obligated to pay Acosta's commissions through July 4, 2019.

13. On June 20, 2019, Acosta provided written notice to National Fruit Company that its June 4, 2019 termination notice failed to provide thirty (30) days' prior written notice and the Broker Agreement therefore remained effective through July 4, 2019. Acosta's written notice further informed National Fruit Company that it had failed to pay Acosta's commissions from February 2018 through the present and demanded that National Fruit Company immediately deliver payment to Acosta for all outstanding commissions National Fruit Company owed to Acosta.

14. On June 21, 2019, National Fruit Company's representative, David Catlett, requested that Acosta provide National Fruit Company with all "outstanding invoices" so that

National Fruit Company "could begin the close out process[,]" despite National Fruit Company being in control of all necessary records to determine Acosta's commissions and all other fees and costs due and owing to Acosta.

15. In response to National Fruit Company's request for all outstanding invoices, Acosta informed National Fruit Company that based on information presently available to Acosta, National Fruit Company owes Acosta commissions totaling approximately $630,000.

16. In addition to the foregoing commissions, National Fruit Company also owes Acosta for:

   i. commissions for the period of May 1, 2019 through July 4, 2019;

   ii. reimbursement for all Fees, as defined in the Broker Agreement, which Acosta incurred from February 1, 2018 through July 4, 2019;

   iii. bonus payments for all net sales of any new products, as set forth in Schedule B to the Broker Agreement; and

   iv. reimbursement for all costs and expenses Acosta incurred before the effective termination date of July 4, 2019.

17. On August 16, 2019, Acosta's counsel tendered an additional notice to National Fruit Company seeking collection of all outstanding commissions, fees and costs National Fruit Company owes Acosta pursuant to the Broker Agreement.

18. To date, National Fruit Company has failed to make any payment whatsoever to Acosta for the sales and marketing services Acosta provided National Fruit Company from February 2018 through July 4, 2019 and has failed to reimburse or pay Acosta for the additional contractual obligations set forth above, as required by the Broker Agreement.

## COUNT I – BREACH OF CONTRACT

19. Acosta realleges and incorporates by reference paragraphs 1 through 18 above as if set forth fully herein.

20. Acosta fully performed its obligations to National Fruit Company under the Broker Agreement.

21. National Fruit Company breached the Broker Agreement by failing to provide thirty (30) days' prior written notice of termination to Acosta and failing to pay Acosta amounts due in accord with the Broker Agreement.

22. As a direct and proximate result of National Fruit Company aforementioned breaches of the Broker Agreement, Acosta has sustained damages.

WHEREFORE, Plaintiff, Acosta, Inc. respectfully demands judgment against Defendant, National Fruit Product Company, Incorporated for damages, together with pre and post judgment interest, and Court costs.

SMITH, GAMBRELL & RUSSELL, LLP

/s/   *Joseph C. Crawford*
ALAN S. WACHS
Florida Bar No. 980160
awachs@sgrlaw.com
tgreene@sgrlaw.com
JOSEPH C. CRAWFORD
Florida Bar No. 124653
jcrawford@sgrlaw.com
aarrazola@sgrlaw.com
50 N. Laura Street, Suite 2600
Jacksonville, FL  32202
(904) 598-6110 (phone)
(904) 598-6210 (facsimile)

*Attorneys for Plaintiff, Acosta, Inc.*